UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------

GEORGE WRIGHT,

                     Plaintiff,

          v.

POLICE OFFICER JAMES TRAPASSO and
POLICE OFFICER KENNETH GREENE,

                     Defendants.

**MEMORANDUM & ORDER**
15-CV-4428 (MKB)

-------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

      Plaintiff George Wright, proceeding *pro se*, commenced the above-captioned action on July 29, 2015, against Defendants Police Officers James Trapasso and Kenneth Greene of the New York City Police Department ("NYPD"). (Compl., Docket Entry No. 1.) Plaintiff's claims arise from his arrest on July 29, 2012. (*Id.* ¶ 8.) Plaintiff asserts claims pursuant to 42 U.S.C. § 1983 for excessive force against Officer Greene, (*id.* ¶¶ 66–69), failure to intervene against Officer Trapasso, (*id.* ¶¶ 90–94), denial of the right to a fair trial against Officer Greene, (*id.* ¶¶ 66–89), and failure to provide medical treatment against both Officers Trapasso and Greene, (*id.* ¶¶ 70–73). Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Defs. Mot. for Summ. J. ("Defs. Mot."), Docket Entry No. 34; Defs. Mem. of Law in Supp. of Defs. Mot. ("Defs. Mem."), Docket Entry No. 38.) For the reasons discussed below, the Court grants the motion in part and denies it in part.

## I.  Background

The following facts are undisputed unless otherwise indicated.[1]

### a.  Traffic stop

On the night of July 29, 2012, Plaintiff was driving home to Staten Island, New York after dropping off his niece and nephews in the Bronx when Defendants pulled him over.  (Dep. of George Wright ("Wright Dep.") 31–34, annexed to Pl. Counter-Statement of Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") as Ex. K, Docket Entry No. 40-11.)[2]  Defendants were on duty patrolling the area and observed Plaintiff's car without a working passenger side headlight.  (Dep. of James Trapasso ("Trapasso Dep.") 9, annexed to Decl. of Erin Ryan ("Ryan Decl.") as Ex. C, Docket Entry No. 37-3.)  Defendants stopped Plaintiff at the intersection of York Avenue and Prospect Avenue in Staten Island, and parked their car about one car length behind Plaintiff's vehicle.  (*Id.*; Defs. Statement of Material Facts Pursuant to Local Rule 56.1 ("Defs. 56.1") ¶ 5, Docket Entry No. 35.)  After being stopped, Plaintiff turned on his car's interior light and rolled down the windows.  (Wright Dep. 38–40.)  Plaintiff then opened his driver's side door and his knee "might have been sticking from where the door and thing is," but he did not get out of the vehicle.  (*Id. at.* 40).

After Plaintiff opened his driver's side door, Defendants ran to his car and warned him multiple times not to get out.  (*Id.* at 41.)  Officer Trapasso approached the driver's side of Plaintiff's vehicle while Officer Greene went to the passenger side.  (*Id.* at 42.)  Defendants gave Plaintiff a "last warning" not to get out of his car.  (*Id.* at 41.)  Plaintiff asked Officer Trapasso

---

[1]  Defendants adopt Plaintiff's version of events for purposes of this motion.  (Defs. Reply Mem. in Supp. of Defs. Mot. for Summ. J. ("Defs. Reply") 4, Docket Entry No. 41.)

[2]  When citing to Plaintiff's deposition testimony, the Court will cite to the full transcript provided by Plaintiff with his Rule 56.1 Statement.

why they stopped him, and Officer Trapasso responded that Plaintiff's "f**king headlights [were] out." (*Id.* at 42.) Plaintiff responded, "for a headlight violation, this is how you treat me for headlight violation." (*Id.* at 43.) Defendants then asked Plaintiff whether he had been drinking or was under the influence of drugs, which Plaintiff denied. (*Id.* at 44–45.) Defendants requested Plaintiff's license and registration, which Plaintiff provided, and returned to their vehicle to process a summons. (*Id.* at 45.)

While Defendants were processing the summons, Plaintiff complained generally about how the Defendants were treating him. (*Id.* at 46.) Plaintiff denied being a drug dealer and complained about being asked whether he was under the influence of drugs or alcohol. (*Id.* at 47.) Although he does not know whether Defendants heard his complaints, Plaintiff admits that his voice "carried." (*Id.*) Plaintiff called 411 with the intention of speaking "with the sergeant to file a complaint," but terminated the telephone call after he was connected to an automated service. (*Id.* at 46–47.)

Defendants returned to Plaintiff's vehicle and issued Plaintiff a summons. (*Id.* at 49.) Plaintiff contends that Officer Greene threw the summons, driver's license, and registration in the vehicle and stated "go f**king take care of that." (Pl. 56.1 ¶ 17.) Plaintiff told Defendants that they were rude and that it was his right to file a complaint against them. (Wright Dep. 49.) Officer Trapasso told Plaintiff that all of his information was on the summons. (*Id.* at 50.) Plaintiff then requested Officer Greene's information. (*Id.*) Officer Greene pointed to his badge and shield, but aimed his flashlight at Plaintiff's eyes, and the officers immediately walked away from Plaintiff's vehicle. (*Id.*)

While Officer Trapasso was in the police vehicle, and as Officer Greene was returning to the police vehicle, Plaintiff yelled at them about his familiarity with the patrol guide. (*Id.* at 51–

3

52.)  Officer Greene told Plaintiff to stop yelling.  (*Id.* at 53.)  Plaintiff testified at his deposition

that Officer Greene told him to "shut the f**k up if you know what's good for you."  (*Id.* at 53.)

Plaintiff did not stop yelling.  (*Id.*)

### b.  Plaintiff's arrest

As Officer Greene was getting into his vehicle, Plaintiff yelled that he was going directly

to the precinct to report Officer Greene to his sergeant.  (*Id.* at 53.)  Officer Greene ran back to

Plaintiff's vehicle with his baton in hand and demanded that Plaintiff step out of his vehicle.  (*Id.*

at 54.)  Plaintiff did not get out of the vehicle because he did "not have time to react."  (*Id.*)

Because the door handle of Plaintiff's vehicle appears not to have been functioning, Officer

Greene reached into the vehicle to open the door.  (Excerpts from May 7, 2013 Crim. Ct.

Testimony of Officer Greene ("Greene Testimony") 8, annexed to Ryan Decl. as Ex. F, Docket

Entry No. 37-5.)

Officer Greene then swung his baton at Plaintiff but missed.  (Wright Dep. 55.)  At the

time of the swing, Plaintiff's head, but not his body, was turned toward Office Greene.  (*Id.*)

Officer Greene then "instantaneously" pepper sprayed the left side of Plaintiff's face, causing

Plaintiff to scream.[3]  (Pl. 56.1 ¶ 22; Defs 56.1 ¶ 27.)  Plaintiff immediately began moving away

from Officer Greene toward the passenger side of his vehicle.  (Wright Dep. 57.)  While Plaintiff

was moving toward the passenger side of the vehicle, Officer Greene struck Plaintiff in the back

with his hand.  (*Id.*)  Plaintiff had one hand over the passenger side console where the glove

compartment is located and one hand on the passenger side seat.  (*Id.* at 59.)  As Plaintiff was

crossing over from the driver side to the passenger side of the vehicle, he twisted and banged his

---

[3]  The pepper spray ended up on several parts of Plaintiff's body, including along the left
side of his face, in his nostril, mouth, ears, on the side of his neck and on the back of his head.
(Wright Dep. 60:15–18.)

4

right knee on the center console.[4]  (*Id.* at 58.)  Plaintiff had no intention to get out of his car.  (*Id.* at 62–63.)

While Plaintiff was moving toward the passenger side of the vehicle, Officer Trapasso ran to the passenger side and forcefully removed Plaintiff from the vehicle.  (*Id.* at 62.)  Officer Trapasso demanded that Plaintiff face the vehicle and lock his fingers behind his head.  (*Id.* at 63.)  Plaintiff screamed for help as he was removed from the vehicle and searched.  (*Id.* at 66–67.)  After the search, Plaintiff asked for medical attention because his knee was "throbbing" and the pepper spray was "burning" him.  (*Id.* at 64–65.)  Defendants did not respond to Plaintiff's request for medical attention.  (*Id.* at 65.)  Plaintiff was handcuffed without resistance, placed in a police vehicle, and transported to the 120th Precinct.  (*Id*. at 70–71.)

### c.  Plaintiff's request for medical treatment

Plaintiff claims that he requested medical treatment while being transported to the precinct but was told that he needed to wait for the arresting officers.[5]  (*Id.*)  When Plaintiff arrived at the precinct, Officer Greene removed him from the police vehicle and brought him into the precinct.  (*Id.* at 73.)  Plaintiff asked Officer Greene why he was being arrested.  (*Id.*)  Officer Greene responded that "you started punching me, you resisted, you were disorderly, you threatened me and my family."  (*Id.*)  Shortly thereafter, Plaintiff asked Officer Greene for medical treatment but received no response.  (*Id.* at 73–74.)  Another officer at the precinct told Plaintiff to "deal with it."  (*Id.* at 74.)  Plaintiff was booked and charged with resisting arrest, menacing in the third degree, harassment in the second degree, and disorderly conduct.  (Arrest

---

[4]  Six months prior to this incident, Plaintiff underwent surgery to his right knee, and at the time of this incident, his knee was still healing.  (Wright Dep. 68.)

[5]  Two unnamed officers transported Plaintiff to the precinct.  (*Id.* at 71.)

Report, annexed to Ryan Decl. as Ex. H, Docket Entry No. 37-7.) The officers fingerprinted, photographed, and placed Plaintiff in a holding cell. (Wright Dep. 80.)

At approximately 5:30 AM the following day, while he was at Central Booking, Plaintiff again requested medical attention due to the effects of the pepper spray. (*Id*. at 80.) An officer told Plaintiff that he would be arraigned "in a couple of hours" and that a request for an ambulance would delay his arraignment. (*Id.*) Avoiding delay of his arraignment, Plaintiff accepted the officer's offer of water and napkins. (*Id*.) Plaintiff did not request any medical treatment again but states that the water caused the effects of the pepper spray to spread. (*Id.* at 80–81.)

### d. Criminal prosecution of Plaintiff

On July 30, 2012, Plaintiff was arraigned on charges of resisting arrest, menacing in the third degree, disorderly conduct, and harassment in the second degree. (Criminal Ct. Certificate of Disposition ("Certificate of Disposition"), annexed to Ryan Decl. as Ex. I, Docket Entry No. 37-8; Wright Dep. 82.) Plaintiff was released on his own recognizance. (Wright Dep. 82–83.) A few days after the arraignment, Plaintiff went to the hospital because of pain in his injured knee. (*Id.* at 86.) X-rays showed inflammation but did not show any tear or damage to ligaments. (*Id.* at 87.) A doctor prescribed medication to reduce inflammation and advised Plaintiff to follow up with his primary care doctor. (*Id*.) Plaintiff did not see his primary care doctor "for a time." (*Id.* at 90.)

In July of 2013, approximately one year after Plaintiff's arrest, a judge in New York state criminal court held a bench trial on charges of attempted assault in the third degree, disorderly conduct, and harassment in the second degree, (Information, annexed to Ryan Decl. as Ex. J, Docket Entry No. 37-9). Plaintiff, Officers Trapasso and Greene, a witness at the scene, and

Plaintiff's character witness, all testified during the proceedings. (Wright Dep. 85–86.) The judge found Plaintiff guilty of disorderly conduct and sentenced him to time served. (*Id.* at 86; Certificate of Disposition.) Plaintiff filed a notice of appeal, but did not prosecute the appeal. (Wright Dep. 9.)

## II. Discussion

### a. Standard of review

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 30 (2d Cir. 2018); *see also Cortes v. MTA NYC Transit*, 802 F.3d 226, 230 (2d Cir. 2015). The role of the court "is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists." *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (first quoting *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); and then citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the nonmoving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Plaintiff's rule 56.1 counter-statement of undisputed facts

Defendants raise several arguments challenging Plaintiff's 56.1 Statement.

First, Defendants argue that the Court should disregard Plaintiff's objections to several

paragraphs in Defs. 56.1 as "disingenuous" because the statements are "supported by [his] own testimony." (Defs. Reply 2 (citing Defs. 56.1 ¶¶ 2, 4, 6–7, 9–12, 14–23, 23–25, 37–39, 41, 43–45, 47, and 51–52).) Defendants argue that "[P]laintiff appears to be calling into question the veracity of his own prior testimony in a blatant attempt to create a disputed issue of fact." (*Id.* at 2.) The Court disagrees. Plaintiff's objections and responses to Defendants' 56.1 statement include additional facts from his deposition, not contradictory facts.

Second, Defendants urge the court to disregard paragraphs in Pl. 56.1 where Plaintiff provides inaccurate, incomprehensible, or unintelligible citations to the record, or no citation at all. (*Id.* at 1–2.) The Court will not disregard factual disputes supported by evidence in the record simply because Plaintiff failed to provide accurate citations. *Sloane v. Getz*, 150 F. App'x 86, 88 (2d Cir. 2005) (finding courts must consider issues of material fact in the record even where a party fails to raise them (citing *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004)). The Court considers Plaintiff's facts, where supported by the record, for the purposes of determining whether a factual dispute exists.

Finally, Defendants argue that "the majority of [P]laintiff's response . . . seem[] to focus on non-material facts." (Defs. Reply 4.) The Court disregards responses containing nonresponsive narrative. *See Goldstick v. Hartford, Inc.*, No. 00-CV-8577, 2002 WL 1906029, at *1 (S.D.N.Y. Aug. 19, 2002).

### c. Section 1983 claims

Plaintiff asserts four section 1983 claims, alleging that: (1) Officer Greene violated his Fourth Amendment rights by using excessive force during the course of his arrest, (Compl. ¶¶ 66–69); (2) Officer Trapasso failed to intervene and prevent Officer Greene from violating his constitutional rights, (*id.* ¶¶ 90–94); (3) Officer Greene deprived him of his constitutional right to

a fair trial by fabricating evidence and forwarding the evidence to the Richmond County District Attorney's Office, (*id.* ¶¶ 74–89); and (4) Officers Greene and Trapasso violated his constitutional rights by failing to provide medical treatment after Plaintiff was pepper sprayed and injured his knee, (*id.* ¶¶ 70–73).

Under section 1983, individuals may bring a private cause of action against persons "acting under color of state law" to recover money damages for deprivations of their federal or constitutional rights. *Matusick v. Erie Cty. Water Auth.*, 757 F.3d 31, 55 (2d Cir. 2014) (quoting 42 U.S.C. § 1983). To establish a viable section 1983 claim, a plaintiff must show "the violation of a right secured by the Constitution and laws of the United States" and that "the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (citations and internal quotation marks omitted).

### i.   Excessive force claim

Defendants argue that Plaintiff's excessive force claim fails because Officer Greene's use of force was objectively reasonable under the circumstances. (Defs. Mem. 6.)

Plaintiff contends that Officer Greene had "no reasonable justification" for striking him, especially "without provocation." (Pl. Opp'n to Defs. Mot. for Summ. J. ("Pl. Opp'n") 1, Docket Entry No. 39.)[6]

"The Fourth Amendment prohibits the use of unreasonable and therefore excessive force by a police officer" in the course of an arrest. *Tracy v. Freshwater*, 623 F.3d. 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). Because the Fourth Amendment's

---

[6] Because Plaintiff's Memorandum of Law in Opposition to the Motion is not consecutively paginated, the Court refers to the page number assigned by the Electronic Case Filing ("ECF") System.

test is one of "objective reasonableness," the inquiry is fact-specific and requires a balancing of various factors. *Id*. When determining whether the force applied was "excessive," a court must analyze the totality of the circumstances facing the officer and consider: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id*. (citations omitted); *see also Nimkoff v. Dollhausen*, 751 F. Supp. 2d 455, 463 (E.D.N.Y. 2010) ("[T]he fact finder must consider the totality of the circumstances, including 'the crime committed, its severity, the threat of danger to the officer and society, and whether the suspect is resisting or attempting to evade arrest.'" (citations omitted)). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Tracy*, 623 F.3d at 96 (quoting *Graham*, 490 U.S. at 397); *Graham*, 490 U.S. at 396 ("Our Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." (citing *Terry v. Ohio*, 392 U.S. 1, 22–27 (1968))). Courts must therefore "evaluate the record 'from the perspective of a reasonable officer at the scene, rather than with the 20/20 vision of hindsight.'" *Tracy*, 623 F.3d at 96 (internal quotation marks omitted) (quoting *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir. 2006)).

Plaintiff contends that Officer Greene used excessive force when he: (1) attempted to strike Plaintiff's knee with a baton;[7] (2) deployed pepper spray; and (3) made contact with

---

[7] Defendants argue that this alleged use of force without any physical contact is not sufficient to sustain a claim for excessive force. (Defs. Mem. 7.) The Court acknowledges that "the Second Circuit has never before recognized" excessive force claims "where no physical contact occurred." *Easton v. City of New York*, No 05-CV-1873, 2009 WL 1767725, at *4 n.5

Plaintiff's back, either with his hand or his baton, as Plaintiff was moving towards the passenger side of the car.

Based on the undisputed facts, an evaluation of the relevant factors, and the totality of the circumstances, the Court concludes that a reasonable juror could find that Officer Greene's actions in spraying Plaintiff with pepper spray was excessive.

### 1. Nature and severity of the crimes

The nature and severity of the crimes leading to Plaintiff's arrest do not support the level of force used by Officer Greene. The offenses are relatively minor crimes and violations. (Certificate of Disposition.)[8] The state formally charged Plaintiff with attempted assault in the third degree, disorderly conduct, and harassment in the second degree, none of which are serious offenses under New York Law.[9] (Information.) By contrast, Officer Greene used a "significant amount of force," *Tracy*, 623 F.3d at 98, in spraying Plaintiff's face with pepper spray immediately after he attempted to use the baton because his use of the baton did not have its "desired effect." (Defs. Mem. 10.) The nature of the crimes alone do not support the level of force used by Officer Greene.

---

(E.D.N.Y. June 23, 2009). Since Plaintiff alleges other uses of force that did involve physical contact, the Court declines to decide whether Officer Greene's action in attempting to strike Plaintiff with his baton is alone sufficient to sustain a claim for excessive force.

[8] Neither party submitted the criminal court complaint filed against Plaintiff. The Court relies upon the state court Certificate of Disposition that lists the arraignment charges. (Criminal Ct. Certificate of Disposition ("Certificate of Disposition"), annexed to Ryan Decl. as Ex. I, Docket Entry No. 37-8; Wright Dep. 82.)

[9] The most serious arrest charge is attempted assault in the third degree, which is a misdemeanor with a maximum punishment of one year in jail. N.Y. Penal Law § 110/120.00. The offense for which Plaintiff was ultimately convicted, disorderly conduct, is considered a "violation" and not a crime under New York law, with a maximum punishment of fifteen days in jail. N.Y. Penal Law § 240.20.

## 2. Threat to the safety of officers and others

A reasonable jury could find that Plaintiff did not pose an immediate threat to Officer Greene's safety. Although Plaintiff opened the driver's side door and had his knee slightly out of the vehicle immediately after the officers stopped his car, (*id.* ¶ 6), Defendants told Plaintiff not to get out of his vehicle, retrieved Plaintiff's license and registration, and issued Plaintiff a summons, (*id.* ¶¶ 7–14.) In addition, during the subsequent confrontation between Plaintiff and the officers, Officer Greene was forced to reach into Plaintiff's car to unlock the car door and Officer Trapasso had to physically remove him from the car after Plaintiff refused to exit the vehicle. (*Id.* ¶ 24.) The objective circumstances do not suggest a safety threat that warranted the degree of force used by Officer Greene. Accordingly, a reasonable jury could find that Plaintiff's actions in moving toward the passenger side of the vehicle — *away* from Officer Green — posed no threat to Officer Greene's safety and, as a result, Officer Greene's use of force under the circumstances was excessive.[10]

## 3. Resisting arrest or attempting to evade the officers

Construing the facts in Plaintiff's favor, Plaintiff was attempting to get away from Officer Greene to avoid further use of force rather than attempting to evade arrest by flight. Plaintiff moved to the passenger side of the car only after Officer Green sprayed him with pepper spray. Further, the fact that Plaintiff refused to exit his vehicle undermines any claim that he was attempting to flee, and suggests Plaintiff was attempting to get to the passenger seat, away from

---

[10] Defendants argue that because Officer Greene did not know whether Plaintiff was attempting to flee from the car or reach for a weapon, his actions of moving toward the passenger side of the vehicle posed a potential danger to Officer Greene's safety. (Defs. Mem. 10.) However, it was Officer Greene's action in deploying the pepper spray that caused Plaintiff to scream and move towards the passenger side of the vehicle. Thus, Plaintiff's actions after being pepper sprayed cannot justify Officer Greene's use of the pepper spray in the first place.

Officer Greene and the pepper spray.

Moreover, even assuming Plaintiff did resist arrest or attempt to evade the officers, Defendants may nevertheless have used more force than necessary to prevent Plaintiff's flight. Resisting arrest "does not give the officer license to use force without limit." *Sullivan,* 225 F.3d at 166. When a suspect resists arrest, "[t]he force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." *Id*.

At most, Plaintiff's "resistance" was his refusal to get out of his vehicle. Considering the totality of the circumstances, a reasonable jury could find that deploying pepper spray at Plaintiff was not reasonably related to Plaintiff's refusal to exit his vehicle under the circumstances.[11]

---

[11] Asserting a theory of collateral estoppel, Defendants argue that Plaintiff's conviction for disorderly conduct precludes him from arguing that he did not engage in "fighting, and violent, tumultuous and threatening behavior during his interaction with the defendant officers." (Defs. Mem. 9.)

The doctrine of collateral estoppel "applies when § 1983 plaintiffs attempt to relitigate in federal courts issues decided against them in state criminal proceedings." *Allen v. McCurry*, 339 U.S. 90, 102 (1980). To apply, (1) the issues in both proceedings must be identical; (2) the relevant issues must have been actually decided and litigated in the prior proceeding; (3) there must have been a full and fair opportunity for the litigation of the issues in the prior proceeding; and (4) the issues were necessary to support a valid and final judgment on the merits in the prior proceeding. *Central Hudson Gas & Elec. Co. v. Empresa Naviera Santa S.A.,* 56 F.3d 359, 368 (2d Cir. 1995). "Collateral estoppel requires a detailed examination of the record in the prior state criminal case, including the pleadings, the evidence submitted, and the jury instructions, in order to determine what issues were actually litigated and necessary to support a final judgment on the merits." *Brown v. New York State S. Ct. for Second Jud. Dist.*, 680 F. Supp. 2d 424, 428 (E.D.N.Y. 2010) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 166 (2d Cir. 2000)). Based on the record, the Court cannot conclude that the state court judge found that Plaintiff "engaged in fighting, and in violent, tumultuous and threatening behavior" during his interaction with Defendants. It is unclear what conduct gave rise to Plaintiff's disorderly conduct conviction. The Information filed against Plaintiff states that Plaintiff "in the Borough of Staten Island, County of Richmond, City and State of New York, on July 29, 2012, with the intent to cause public inconvenience, annoyance or alarm or recklessly causing a risk thereof, engaged in fighting, and in violent, tumultuous and threatening behavior." (Information.) There is no evidence before the Court as to what conduct on the part of Plaintiff the state court judge found

#### 4. Plaintiff's injuries are not *de minimis*

Defendants argue that Plaintiff's excessive force claim fails because Plaintiff's injuries "are nothing more than *de minimis*." (Defs. Mem. 13.)

"[T]he extent of injury" is a "relevant" but non-dispositive factor in evaluating an excessive force claim. *Abreu v. Nicholls*, 368 F. App'x 191, 193 (2d Cir. 2010). "[I]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir. 1987). "[A] very minimal injury" may therefore be "'sufficient to trigger potential liability' for excessive force" under the right circumstances. *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 176–77 (E.D.N.Y. 2010) (citation omitted); *see also Hayes v. N.Y.C. Police Dep't*, 212 F. App'x. 60, 62 (2d Cir. 2007) ("[W]e have permitted claims to survive summary judgment where the only injury alleged is bruising" (citations omitted)).

Plaintiff contends that his encounter with Officer Green left his eyes and skin burning and his right knee inflamed. (Pl. 56.1 ¶ 27.) Plaintiff sought medical care for his right knee two days after his arraignment on criminal charges, and x-rays confirmed inflammation in Plaintiff's right knee. (Wright 86–87.) Plaintiff's alleged injuries are sufficient to allow his excessive force claim to proceed. *Robison*, 821 F.2d at 924 ("While [the plaintiff] did not seek medical treatment for her injuries, and this fact may ultimately weigh against her in the minds of the jury

---

beyond a reasonable doubt, to constitute disorderly conduct. Moreover, even if Plaintiff "engaged in fighting, and violent, tumultuous and threatening behavior during his interaction with the [D]efendant officers," (Defs. Mem. 9), the sequence of events is unclear and Plaintiff may nevertheless be able to establish that the officer's use of force was excessive, regardless of Plaintiff's conduct. *See Gardner v. Robinson*, No. 16-CV-1548, 2018 WL722858, at *4 (S.D.N.Y. Feb. 6, 2018) ("Plaintiff may establish that Defendants' alleged use of force was excessive" even if he engaged in fighting, and violent, tumultuous and threatening behavior "at some point during the arrest." (citing *Harley v. Suffolk Cty. Police Dep't*, No. 09-CV-2897, 2012 WL642431, at *9 (E.D.N.Y. Feb. 28, 2012))).

in assessing whether the force used was excessive, the failure is not fatal to her claim.); *Lucky v. City of New York*, No. 03-CV-1983, 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004) (denying defendants' motion for summary judgment on plaintiff's excessive force claim and finding that "[w]hile [the plaintiff's] injuries appear to be *de minimis*, his statements that he was shoved in the police car in a manner that injured his shoulder" created a disputed issue of material fact); *Graham v. City of New York*, 928 F. Supp. 2d 610, 618–19 (E.D.N.Y. 2013) (denying summary judgment of the plaintiff's Fourth Amendment excessive force claim where plaintiff complained that he was forcibly removed from his car and handcuffed without justification and, although he experienced no lasting damage, suffered immense pain and swelling); *Laporte v. Fisher*, No. 11-CV-9458, 2012 WL 5278543, at *3–4 (S.D.N.Y. Oct. 24, 2012) (finding that a punch to the plaintiff's stomach which caused him to lose his breath could constitute excessive force if done to harass plaintiff); *Hodge v. Village of Southampton*, 838 F. Supp. 2d 67, 77–78 (E.D.N.Y. 2012) (denying summary judgment where plaintiff was treated for bruising at a hospital and discharged with Motrin).

### ii.  Qualified immunity

Defendants argue that they are entitled to qualified immunity because "Plaintiff has not established the violation of a clearly established constitutional right" and in the alternative, the force used by Officer Greene "was clearly reasonable given the circumstances." (Defs. Mem. 22–23.)

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Russo v. City of Bridgeport*, 479

F.3d 196, 211 (2d Cir. 2007)).

As to whether the right is clearly established, the "dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)). "[T]he relevant question . . . is . . . whether a reasonable officer could have believed [his or her conduct] to be lawful, in light of clearly established law and the information [he or she] possessed." *Moore v. Vega*, 371 F.3d 110, 115 (2d Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). Thus, "[e]ven if the right at issue was clearly established in certain respects . . . an officer is still entitled to qualified immunity if 'officers of reasonable competence could disagree' on the legality of the action at issue in its particular factual context." *Walczyk v. Rio*, 496 F.3d 139, 165–66 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Only Supreme Court and Second Circuit precedent existing at the time of the alleged violation is relevant in deciding whether a right is clearly established." *Vega*, 371 F.3d at 114.

"Although a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual question must be resolved by the factfinder." *Taravella v. Town of Wolcott*, 599 F.3d 129, 135 (2d Cir. 2010) (quoting *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)); *see also Bonilla v. United States*, 357 F. App'x 334, 335 (2d Cir. 2009) ("Although qualified immunity is a question of law for the [c]ourt, if there are factual disputes that bear directly upon whether it was objectively reasonable for an official to believe that he was acting lawfully, these disputes must be resolved by a jury before the legal question can be addressed." (citing *Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003))) 225 F.3d 161. Defendants bear the burden of proof to establish that qualified immunity exists. *Sudler v. City of*

*New York*, 689 F.3d 159, 174 (2d Cir. 2012); *Jackler v. Byrne*, 658 F.3d 225, 242 (2d Cir. 2011).

Because freedom from the use of excessive force is a clearly established constitutional right, the remaining question is whether it was objectively reasonable for Officer Green to believe that his actions did not violate Plaintiff's right to be free from excessive force. *See Swartz v. Insogna*, 704 F.3d 105, 111 (2d Cir. 2013) (holding that a police officer is immune if he had "'an objectively reasonable belief that his actions [were] lawful'") (quoting *Okin v. Village of Cornwall-On-Hudson Police Dept.*, 577 F.3d 415, 433 (2d Cir. 2009)).

As discussed above, there are disputed issues of material fact as to whether the force used to arrest Plaintiff was reasonable. For the same reasons as set forth above, the Court finds that there are disputed issues of material fact as to whether a reasonable officer would believe that the force used by Officer Green was not excessive. *See Thomas v. Roach*, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded.").

Accordingly, the Court denies Defendants motion for summary judgment on the basis of qualified immunity.

### iii.   Failure to intervene claim

Defendants argue that they are entitled to summary judgment because there is no underlying constitutional violation. Defendants argue in the alternative that this claim fails because when the allegedly excessive force was deployed, Officer Trapasso was too far from Plaintiff's car to react and therefore did not have a realistic opportunity to intervene. (Defs. Mem. 15–16.)

Plaintiff argues that Officer Trapasso "refused to intervene" while Officer Green used

excessive force against him, failed "to report the incident to his superior," and lied about the incident "through the use of written statements and verbal testimonies." (Pl. Mem. 2.) The parties agree that: (1) Officer Trapasso was in the police car when Officer Greene swung his baton and pepper sprayed Plaintiff, (Defs. 56.1 ¶ 36; Pl. 56.1 ¶ 18); (2) while in the police car, Officer Trapasso observed Plaintiff crawl to the passenger side of the vehicle, (Defs. 56.1 ¶ 36); and (3) Officer Trapasso removed Plaintiff from his vehicle through the passenger side door, (Defs. 56.1 ¶ 36–37; Pl. 56.1 ¶ 25).

"[L]aw enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014) (quoting *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases)). "A police officer is personally involved in the use of excessive force if he either: (1) directly participates in an assault; or (2) was present during the assault, yet failed to intercede on behalf of the victim even though he had a reasonable opportunity to do so." *Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 474 (S.D.N.Y. 2003) (citing *Ricciuti*, 124 F.3d at 129). An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (citation omitted); *see also Terebesi*, 764 F.3d at 244.

Construing the facts in the light most favorable to Plaintiff, there is no indication that Officer Trapasso had an opportunity to intervene. The events giving rise to Plaintiff's claim of excessive force appeared to have occurred quickly. After swinging his baton and missing Plaintiff's knee, Officer Greene "instantaneously" deployed pepper spray. (Defs. 56.1 ¶ 27; Pl. 56.1 ¶ 2.) Officer Trapasso then observed Plaintiff crawl to the passenger side of the vehicle.

(Defs. 56.1 ¶ 36.)  It was during this time that Officer Greene struck Plaintiff's back.  (Defs. 56.1 ¶ 30–32.)  "As Plaintiff arrived in the passenger side of his vehicle, he was immediately removed by Officer Trapasso."  (Pl. 56.1 ¶ 25; Defs. 56.1 ¶ 36.)  Although Officer Trapasso may have had an opportunity to see some of Officer Greene's actions against Plaintiff, there is no indication that Officer Trapasso had a realistic opportunity to intervene and prevent Officer Greene from using the pepper spray.  *See Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) ("An officer may be liable for the preventable harm caused by the officer's failure to intervene during a constitutional violation where the officer "observes the [constitutional violation] and has sufficient time to act to prevent it.")  The Court therefore grants Defendants motion for summary judgment as to Plaintiff's failure to intervene claim against Officer Trapasso.[12]

### iv.  Medical treatment claim

Defendants argue that Plaintiff's claim of deliberate indifference to his requests for medical treatment fails as a matter of law because Plaintiff fails to establish an objectively serious medical condition.  (Defs. Mem. 16–17.)

Plaintiff argues that Defendants had an obligation to provide medical treatment and deliberately failed to do so.  (Pl. Mem. 3.)

The Due Process Clause of the Fourteenth Amendment governs a pretrial detainee's claim of unconstitutional conditions of confinement.  *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  In contrast to a convicted prisoner, "'[p]retrial detainees have not been convicted of a

---

[12]  Plaintiff also argues for the first time in his Opposition to the motion that Officer Trapasso failed to intervene by not reporting "the incident to his superior."  (Pl. Mem. 2.)  To the extent Plaintiff attempts to raise a claim under section 1983 for "failure to report," the Court declines to consider such a claim.  *Lyman v. CSX Transp., Inc.*, 364 F. App'x 699, 701 (2d Cir. 2010) (affirming district court's decision not to consider claim raised for the first time in opposition to summary judgment).

crime and thus 'may not be punished in any manner — neither cruelly and unusually nor otherwise.'" *Id.* (alteration in original) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007)).

To state a claim of deliberate indifference to medical needs, a plaintiff must allege (1) that he had an objectively "serious medical condition," (the "objective prong") and (2) that this condition was met with "deliberate indifference" on the part of defendants (the "*mens rea*" prong). *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2010). In order to satisfy the objective prong, a plaintiff must establish a serious medical condition by showing "that his medical need was 'a condition of urgency, one that may produce death, degeneration, or extreme pain.'" *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir. 2005) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998)). "Factors relevant to the seriousness of a medical condition include whether 'a reasonable doctor or patient would find [it] important and worthy of comment,' whether the condition 'significantly affects an individual's daily activities,' and whether it causes 'chronic and substantial pain.'" *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006) (quoting *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)). In order to satisfy the subjective prong, a plaintiff must show that the defendant "acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 30.

Plaintiff's knee injury and the effects of the pepper spray are not sufficiently serious medical conditions to state a claim for deliberate indifference to his request for medical care. Plaintiff complained of "incredible discomfort" because of the pepper spray. (Pl. 56.1 ¶ 41.) At central booking, Plaintiff was told that an ambulance would delay his arraignment and was offered water and napkins. (Wright Dep. 80.) Instead of delaying arraignment, Plaintiff decided to accept water and napkins and forego medical treatment, undermining any argument that his

pain was extreme or that urgent medical care was required.[13]  (Defs. 56.1 ¶ 45.)  In addition,

Plaintiff does not claim any lasting physical injuries from the pepper spray.  Plaintiff's

"incredible discomfort" as a result of the pepper spray does not rise to the level of seriousness

required for a constitutional violation.  *See Holmes v. City of New York*, No. 17-CV-3874, 2018

WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018) (holding that "the temporary effects of chemical

spray are not serious medical needs because they do not rise to the level of producing death,

degeneration, or extreme pain"); *Lewis v. Clarkstown Police Dep't.*, No. 11-CV-2487, 2014 WL

1364934, at *7 (S.D.N.Y. Mar. 31, 2014) (holding that the plaintiff's deliberate indifference

claim fails as a matter of law because the temporary discomfort of chemical spray does not

constitute a "sufficiently serious" injury).

Plaintiff also claims that he suffered "severe pain" in his knee as a result of Officer

Greene's excessive force during his arrest, causing him to seek medical treatment.  (Pl. 56.1 ¶

47.)  Plaintiff includes in his submissions several medical reports from the Staten Island

Physician Practice for medical visits from June of 2011 to November of 2013, including an

urgent care visit on August 2, 2012, a few days after his arrest.  (Medical Reports, Docket Entry

No. 40-23.)  The August 2, 2012 medical report indicates that Plaintiff complained of pain in his

right knee, but Plaintiff did not suffer any fracture, dislocation, or other serious injury.  Plaintiff

also testified at his deposition that he received "some pills for the inflammation and stuff that

was going on with my knee."  (Wright Dep. 87.)  Plaintiff does not complain of any chronic or

substantial pain nor does Plaintiff complain of any limitations to his daily activities.  Plaintiff's

knee injury is also not a serious medical condition as required to state a claim for deliberate

---

[13]  Although not required, Plaintiff also did not submit any evidence that he sought medical attention for the effects of the pepper spray after he was released on his own recognizance.

indifference to his request for medical care.[14]  *See Goodwin v. Kennedy*, No. 13-CV-1774, 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) ("Courts in this Circuit have consistently held that cuts, lacerations, bruises, and other superficial injuries . . . 'are not sufficiently serious to support' a deliberate indifference claim." (citing cases)).

Accordingly, the Court grants Defendants' motion for summary judgment as to this claim.

### v.  Denial of the right to a fair trial

Defendants argue that "the record is devoid of any evidence, other than [P]laintiff's own self-serving testimony," to show that Officer Greene fabricated evidence that Plaintiff threatened the officers and their mothers.  (Def. Mem. 20.)  In addition, Defendants argue that even assuming Officer Greene fabricated evidence, Plaintiff cannot show that he suffered a deprivation of liberty as a result of the purported fabricated evidence.  (*Id.*)

To establish a fair trial claim based on fabrication of evidence, a plaintiff must show that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result."  *Ganek v. Leibowitz*, 874 F.3d 73, 90 (2d Cir. 2017) (quoting *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016)).  Unlike a false arrest or malicious prosecution claim, "probable cause is not a defense to a claim for a denial of the right to a fair trial" based on the fabrication of evidence.  *Garnett*, 838 F.3d at 277 (alteration omitted) (citing *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012)).

A plaintiff need only produce some evidence showing that the officer's statement or

---

[14]  Because Plaintiff cannot show that the medical conditions for which the officers allegedly denied him medical treatment were sufficiently serious, the Court declines to determine whether Plaintiff can satisfy the second prong.

evidence is false or manipulated.  *See Garnett*, 838 F.3d at 269–70, 279 (holding that the plaintiff's and the officer's conflicting accounts of the events underlying the charges created an issue of fact as to falsity); *Morse v. Fausto*, 804 F.3d 538, 547 (2d Cir. 2015) (holding that the plaintiff's documents showing that the prosecutor omitted material portions of relevant evidence created an issue of fact on falsity); *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) (holding that the plaintiff's testimony that the information was false was sufficient evidence to create an issue of fact as to falsity).

A plaintiff can establish a deprivation of liberty through the number of court appearances a plaintiff made post-arraignment, constraints such as bail requirements, a period of incarceration or travel restrictions.  *See Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 117 (2d Cir. 1995); *Arbuckle v. City of New York*, No. 14-CV-10248, 2016 WL 5793741, at *10–11 (S.D.N.Y. Sept. 30, 2016) (collecting cases).  While the number of times a plaintiff was required to appear before a state court bolsters the plaintiff's claim that the plaintiff's liberty was deprived, a lack of numerous court appearances is not dispositive.  *See Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) (holding that "[t]he number of appearances may bear upon whether there was a seizure" rising to the level of a deprivation of liberty).  A plaintiff may sufficiently establish a deprivation of liberty when he or she is detained before arraignment, required to be available to reappear before the state court at any time and therefore limited in his or her travel after being released from custody, and makes at least one post-arraignment appearance before a state court.  *See Insogna*, 704 F.3d at 112 ("We have consistently held that a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a . . . deprivation of liberty." (internal quotation marks omitted) (quoting *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997))); *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 216

(2d Cir. 2000) (holding that a plaintiff established a deprivation of liberty where the conditions of post-arraignment release required him to remain available to return to court and therefore remain in the state); *Norton v. Town of Islip*, No. 12-CV-4463, 2016 WL 264930, at *4 (E.D.N.Y. Jan. 21, 2016) ("[W]hat the Second Circuit found most salient . . . was . . . the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions and not the number of post-arraignment court appearances required of the criminal defendant."); *cf. Burg*, 591 F.3d at 98 (holding that "the issuance of a pre-arraignment non-felony summons requiring a later court appearance, without further restrictions, does not constitute a . . . seizure"); *Arbuckle*, 2016 WL 5793741, at *11 (finding that "merely having to respond to orders of the court is insufficient [alone] to allege a deprivation of liberty").

Officer Greene does not dispute that he is an investigating officer, that he forwarded information about Plaintiff's arrest to the DA's office, or that the evidence was likely to influence a jury's verdict. (*See generally* Defs. Mem.)

### 1. Fabricated evidence

During Plaintiff's criminal trial, Officer Greene testified that, during the traffic stop, Plaintiff yelled, "I'm going to f**king get you and your mothers. F**k you." (Greene Testimony 16.) Defendants also included this statement in Plaintiff's arrest report. (Arrest Report.) Officer Greene also testified that Plaintiff attempted to hit him. (*Id*.) Plaintiff denies making this statement and denies attempting to assault Officer Greene. (Wright Dep. 73–74.) Thus, there exists a material dispute as to whether Plaintiff made the alleged statement or attempted to hit Officer Greene, precluding summary judgment.

### 2. Deprivation of liberty

Plaintiff has established a deprivation of liberty based on his post-arraignment court

appearances. Plaintiff was required to appear in court multiple times. (Wright Dep. 85.) In addition, Plaintiff was arrested and arraigned in July of 2012, his bench trial began in July of 2013 (Wright Testimony 1, Docket Entry No. 40-4), and he was convicted in October of 2013, (Certificate of Disposition), over one year after his criminal court arraignment. Plaintiff has established deprivation of liberty. *See Naim v. City of N.Y.*, No. 10-CV-912, 2012 WL 2923308, at *3 (E.D.N.Y. July 18, 2012) (finding deprivation of liberty because Plaintiff was required to return to court following arraignment and "he was necessarily subject to travel restrictions when he was released on his own recognizance in New York State").

Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiff's denial of a fair trial claim.

## III. Conclusion

For the foregoing reasons, the Court denies (1) Defendants' motion for summary judgment as to Plaintiff's excessive force and denial of a fair trial claims against Officer Greene, and (2) grants Defendants' motion for summary judgment as to the failure to intervene claim against Officer Trapasso and failure to provide medical treatment claim against Officer Greene and Officer Trapasso.


SO ORDERED:


_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: September 28, 2018
       Brooklyn, New York